IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHARLES EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 15-9100-CM |
| WILLIAM D. MAUCH, M.D., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Charles Evans brings this action, claiming that defendant William D. Mauch, M.D., was negligent during surgery to remove a kidney stone from plaintiff's ureter. Plaintiff claims that defendant's negligence caused a perforation of the ureter, which led to a number of other issues—ultimately resulting in a second surgery and an injury suffered during the second surgery known as compartment syndrome. Defendant filed a Motion to Strike Plaintiff's Expert Witness Ralph E. Duncan M.D. and for Summary Judgment (Doc. 77). Defendant asks the court to strike plaintiff's expert for several reasons, including the fact that his expected opinions exceed the scope of his expert report, which plaintiff never supplemented. If the court strikes these opinions, defendant argues, then summary judgment is warranted because plaintiff has no other evidence to support his claims.

### Plaintiff's Claims in Pretrial Order

The court begins its analysis with the pretrial order. Local Rule 16.2 states that the pretrial order, when approved by the court and filed with the clerk, "control[s] the subsequent course of the action." D. Kan. R. 16.2(c); *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation.").

This means that plaintiff is bound to prove his claims as set forth in the pretrial order. To avoid summary judgment in favor of defendant, plaintiff must have evidence to support those claims.

In the pretrial order, plaintiff states his claims as follows:

> Charles Evans asserts the defendant negligently performed surgery on him on July 1, 2014. Plaintiff contends that when defendant attempted to remove the stone from the ureter he should have either terminated the procedure when his first attempt to dislodge the stone failed, or attempted to break up the stone with a laser before trying multiple times to dislodge the stone from the wall of the ureter.

Based on this statement, plaintiff's claims are that defendant was negligent because (1) after he attempted to dislodge the stone once (and failed), he did not terminate the procedure; and (2) he tried multiple times to dislodge the stone without first attempting to break up the stone with a laser.

These claims differ from those acts of negligence identified in Dr. Duncan's expert witness report and his first deposition. In his expert witness report, Dr. Duncan stated:

> The standard of care in this case at the time of this patient's treatment required atraumatic stone manipulation which was not performed in this case and represents a surgical error which falls below the Standard of Care. The basketed ureteral calculus should not have been forced through a smaller ureteral lumen. Had the Standard of Care been met in this case the patient's complications would have been avoided.

Dr. Duncan's expert report does not mention dislodging the stone. In fact, Dr. Duncan did not know that the stone had been embedded in the ureter at the time of his first deposition. (*See* Doc. 78-2 at 23.) Defendant's operative report does not describe the stone as being embedded in the wall of the ureter. Also, defendant's operative report does not describe multiple attempts to dislodge the stone from the wall of the ureter. (*See* Doc. 78-4 at 85.) This may explain why Dr. Duncan failed to mention the stone being embedded in his expert report or during his deposition.

During Dr. Duncan's deposition, he further explained his theory of negligence:

> Q. And in the paragraph three, the standard of care opinions, you indicated that the standard of care required atraumatic stone manipulation, is that right?
> A. Yes.

-2-

> Q. And then you believe that it was not, that it was not performed in this case, in your conclusion. Is that correct?
> A. Yes, sir.
>
> . . . .
>
> Q. And then you identified in the very next sentence why you believe that it was not traumatic stone manipulation, or the way in which it was not, and that was because the basketed ureteral calculus should not have been forced through a smaller ureteral lumen. Is that correct?
> A. Yes, sir.
> Q. So the atraumatic manipulation that was below the standard of care that you've identified was forcing a basketed ureteral calculus through a smaller ureteral lumen. Is that correct?
> A. Yes, sir.

In both Dr. Duncan's expert report and deposition, he identified defendant's negligent act as that of forcing a large stone through a ureteral lumen that was too small. This theory is different from those theories identified in the pretrial order. Because the pretrial order controls the direction of the case, plaintiff is bound to proceed on the theories outlined there; not the theory originally advanced by Dr. Duncan.

## **Failure to Supplement Expert Report**

Dr. Duncan never supplemented his expert report—even after plaintiff learned that the stone had been embedded in the ureter. Plaintiff claims that supplementation was unnecessary because the theories of negligence that he advances now are mere clarifications of Dr. Duncan's expert report. Plaintiff further believes that Dr. Duncan testified in his deposition consistent with the claims in the pretrial order, and that Dr. Duncan's deposition testimony was sufficient to put defendant on notice of his theories. Notably, plaintiff failed to cite with specificity to deposition testimony where Dr. Duncan made the statements allegedly consistent with the pretrial order claims.

Fed. R. Civ. P. 26(a)(2) governs expert witness reports. The rule lists specific criteria designed to eliminate the opportunity for surprise. *Murray v. First Marine Ins. Co.*, 29 F. App'x 503, 507 (10th

Cir. 2002) ("[T]he idea behind the rule is to give opposing counsel an opportunity to inquire about the basis of an expert's testimony.  Because the photographs were not mentioned in the Rule 26 report, the Murrays did not have a fair opportunity to prepare to cross-examine the expert or his evidence. . . ."). Each expert report must contain (among other things) "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  "Supplemental disclosures are permitted, and indeed may be required."  *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004); *see* Fed. R. Civ. P. 26(e).

A comparison of Dr. Duncan's expert report, his deposition testimony, and the claims in the pretrial order shows that the three are not the same.  The pretrial order claims are not a logical and reasonable extension of Dr. Duncan's report and testimony.  The court determines that supplementation was necessary.

### Sanction for Failure to Supplement

Fed. R. Civ. P. 37(1)(c) prohibits a party from using a witness or information from that witness if the party fails to identify the witness pursuant to Rule 26(a) or fails to supplement the information provided.  If the failure is substantially justified or harmless, the sanction does not apply.  Rule 37(c)(1) incorporates the available sanctions from Rule 37(b)(2), which include (a) prohibiting the party from using the evidence to support or oppose designated claims and defenses, and (b) prohibiting the party from introducing the designated testimony into evidence.  *See Gust v. Jones*, 162 F.3d 587, 592–93 (10th Cir. 1998) (upholding trial court decision to preclude expert witness from testifying on deviations from the standard of care because they were not included in his expert report); *Williams v. Burlington N. & Santa Fe Ry. Co.*, 13 F. Supp. 2d 1125, 1127 (D. Kan. 1998) (confining testimony to expert's written report).

Plaintiff argues that any failure to disclose was harmless. But discovery closed on March 4, 2016. The pretrial order was filed on March 25, 2016. The mere timing of plaintiff's announcement of the new theories was prejudicial. Without the court deciding to reopen discovery, defendant cannot fully examine any new opinions that Dr. Duncan intends to offer. The court already moved the trial date once because of its own scheduling conflicts, and the new trial date is only two months away. The court finds that this prejudice does not constitute the "curable prejudice" that plaintiff raises in his response brief. Neither did defendant "open the door" to these theories of negligence. The court concludes that Dr. Duncan should be limited at trial to testimony consistent with and limited to the theory identified in his expert report: that "[t]he basketed ureteral calculus should not have been forced through a smaller ureteral lumen."

### **Impact of Sanction**

Finally, the court reviews the impact of limiting the testimony of Dr. Duncan. In other words, without testimony by Dr. Duncan on the theories identified in the pretrial order, does plaintiff have a viable case for a jury? The court determines that he does not, and summary judgment is appropriate.

To establish a medical malpractice claim, the elements are generally the same as those required to establish any negligence claim: (1) the defendant owed the plaintiff a duty of care and was required to meet a certain standard of care; (2) breach of this duty; (3) an injury to the plaintiff; and (4) the breach of the standard of care caused the injury. *See Nold v. Binyon*, 31 P.3d 274, 285 (Kan. 2001). "Expert testimony is required in medical malpractice cases to establish the applicable standard of care and to prove causation." *Watkins v. McAllister*, 59 P.3d 1021, 1023 (Kan. Ct. App. 2002).

Dr. Duncan's testimony is critical to plaintiff's ability to show that defendant had a duty to meet a certain standard of care and breached that duty. Plaintiff has not directed the court to any expert testimony that supports his new claims in the pretrial order. Dr. Duncan has not testified that

defendant breached a standard of care by (1) failing to terminate the procedure after he attempted to dislodge the stone once, or (2) trying multiple times to dislodge the stone without first attempting to break up the stone with a laser.  The court found no mention of the stone being embedded in Dr. Duncan's deposition, and plaintiff did not specifically direct the court to any such testimony.  Without expert testimony supporting plaintiff's theories, summary judgment is warranted in favor of defendant.

Although defendant also asked the court to prevent Dr. Duncan from testifying at trial based on *Daubert*, the court need not reach these arguments because of its rulings here.

**IT IS THEREFORE ORDERED** that defendant's Motion to Strike Plaintiff's Expert Witness Ralph E. Duncan M.D. and for Summary Judgment (Doc. 77) is granted.

The case is closed.

Dated this 1st day of December, 2016, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**